UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEELY ANN VILLARREAL,

    Plaintiff                                Civil Action No. 13-12252
v.                                           HON. ROBERT H. CLELAND
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Keely Ann Villarreal ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be DENIED and that Plaintiff's motion for summary judgment be GRANTED to the extent that the case be remanded for further administrative proceedings.

## PROCEDURAL HISTORY

On September 15, 2010, Plaintiff filed applications for Disability Insurance Benefits ("DIB") (Tr. 160-166) and Supplemental Security Income ("SSI") (167-171) alleging

disability as of December 1, 2008 (Tr. 160). After the initial denial of the claim, Plaintiff filed a timely request for an administrative hearing, held on February 2, 2012 in Baltimore, Maryland before Administrative Law Judge ("ALJ") David J. Begley (Tr. 26). Plaintiff, represented by attorney J. Frye, testified by teleconference from Detroit, Michigan (Tr. 32-56). Vocational Expert ("VE") Bassey Duke also testified (Tr. 56-60). On March 23, 2012, ALJ Begley found that Plaintiff was not disabled (Tr. 20-21). On March 19, 2013, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on May 20, 2013.

## BACKGROUND FACTS

Plaintiff, born October 22, 1976, was 35 when the ALJ issued the decision (Tr. 21, 160). She left school after eighth grade and worked previously as a laborer and a manager of a fast food restaurant (Tr. 186). She alleges disability as a result of fibromyalgia, bipolar disorder/depression, psychosis, and hearing loss (Tr. 185).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She stood 5' 4" and weighed 170 pounds (Tr. 32). In the past two years, her weight had fluctuated between 150 and 210 pounds (Tr. 32). She last worked in September, 2008 as a restaurant manager at a Kentucky Fried Chicken store (Tr. 33). In addition, she held jobs as non-supervising fast food staff and an assembly line position as a sewer (Tr. 33-34). Since September, 2008, she had looked for other work (Tr. 33). She received Workers'

Compensation payments in 2002 (Tr. 34). She was presently unable to work due to body pain, "being around people," and confusion as a result of medications (Tr. 33).

Plaintiff lived in a single family home with her husband and four children ages 13, 8, and twins, 5 (Tr. 35). She held a current driver's license, but her husband drove her to the hearing (Tr. 36). Because she experienced panic attacks and anxiety while driving, she limited her driving to two to three times a week (Tr. 36). She left school after eighth grade but was a certified nurse's aide (Tr. 37). She currently received food stamps and Medicaid (Tr. 37). She received mental health therapy regularly in the four months before the hearing (Tr. 38).

Despite taking psychotropic medication, Plaintiff had "good" and "bad" days (Tr. 40). Lexapro helped her control her anger (Tr. 40). She had not taken prescribed medication consistently in the past, but now took the medication as directed (Tr. 40). The last year had been a "good year" (Tr. 40). She experienced back, left hip and left leg pain (Tr. 41). She experienced only short-term relief from Vicodin and Neurontin (Tr. 41). Epidural injections relieved her back and leg discomfort (Tr. 42). Bending, twisting, and sitting for extended periods caused body pain (Tr. 43). On a scale of one to ten, she characterized her pain on a bad day as an "eight" and a good day as a "five" (Tr. 43). She experienced limited relief from daily headaches with Neurontin and over-the-counter medicine (Tr. 43).

Plaintiff was unable to walk even one block (Tr. 44). She was able to stand or sit between five and forty-five minutes at a time (Tr. 44). Due to symptoms of Carpal Tunnel

Syndrome ("CTS"), she experienced right finger numbness and was unable to lift more than one gallon of milk (Tr. 44). Carpal Tunnel release surgery had been scheduled in 2002, but canceled due to an insurance denial (Tr. 45).

On a typical day, Plaintiff would arise at 5:40 a.m., drink coffee, watch the news, take a shower, get dressed, and wake her children and prepare them for school (Tr. 45, 48). She spent the rest of the day performing light household chores or reclining (Tr. 46). She became anxious while grocery shopping with her husband, resulting in her saying "vulgar things to other people in the store when they have done no harm to me" (Tr. 47). She experienced "angry outbursts" approximately three times a week at which time she would "want to hurt somebody," but did not resort to physical violence because she did not "want to get in trouble for it" (Tr. 52). She was less prone to outbursts while on Lexapro (Tr. 53). She did not read books or use the home computer (Tr. 47-48). She slept between four and six hours a night, and took naps lasting up to an hour around twice a week (Tr. 48). She denied current church or club activities (Tr. 49). She was able to help her eight-year-old with homework assignments (Tr. 49). She smoked three-quarters of a pack of cigarettes each day (Tr. 50). She had not used marijuana for the past year-and-a-half (Tr. 50).

Plaintiff experienced auditory and visual hallucinations in the past year, adding that voices said "bad things" to her (Tr. 50-51). She experienced fewer hallucinations since taking medication, but experienced depression every day (Tr. 52). Body pain caused difficulty in overhead reaching, climbing stairs, and bending (Tr. 53). She experienced left

arm pain since breaking her clavicle in 2001 (Tr. 54). Concentrational limitations caused problems in reading comprehension and following the plot of television shows (Tr. 54-55).

    **B.    The Treating Records**

May, 2009 psychological intake records state that Plaintiff first experienced depression at the age of 14 (Tr. 240). Plaintiff reported irritability, crying jags, low energy, and concentrational problems (Tr. 240). She stated that she typically arose at 4:00 a.m. to clean her house (Tr. 240). She reported significant body pain (Tr. 240, 244). She denied homicidal or suicidal ideation (Tr. 242). Kashif Khan, M.D. assigned a GAF of 55[1] and prescribed Prozac (Tr. 242). At an August, 2008 counseling session, Plaintiff reported fatigue and chronic pain (Tr. 250). June, 2009 therapy notes state that Plaintiff was alert, appropriately dressed, engaged, but depressed (Tr. 258). August, 2009 treating records state that Plaintiff was prescribed psychotropic medication but declined therapy (Tr. 254). Medical treating records from the same month state that Plaintiff, described as a "very challenging patient," had a "potential for severe fibromyalgia" (Tr. 302). Notes from later the same month state that Plaintiff's account of aches and pains was "extraordinary for fibromyalgia" (Tr. 307). Medical treating notes from the following month note a normal "[p]sych exam" (Tr. 308). An October, 2009 x-ray of the right wrist was unremarkable (Tr. 334). November, 2011 medical treating notes state that Plaintiff was non-compliant with

---

[1] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision,* 34 ("*DSM-IV-TR*")(4th ed.2000).

prescribed pain medication usage (Tr. 311). The following month Stephen Bachmeyer, M.D., noting Plaintiff's history of gastric bypass surgery, found that she was currently malnourished (Tr. 312).

A January, 2010 medication review states that Plaintiff was assigned a GAF of 45[2] due to a schizoaffective disorder, major depression, and a compulsive personality disorder (Tr. 264). Plaintiff reported reduced auditory hallucinations while on medication (Tr. 264). She exhibited a logical thought process and was appropriately groomed and dressed (Tr. 266-267). Medical treating notes state that Neurontin did not relieve headaches (Tr. 594). Notes from the following month state that she appeared relaxed (Tr. 270). She was assigned a GAF of 50 (Tr. 279). May, 2010 records by Luven Tejero, M.D. state that Plaintiff was "irritable" but exhibited a normal affect and logical thought process (Tr. 286, 288). June, 2010 notes state that she was "calm and relaxed" (Tr. 290). September, 2010 treatment notes state that Plaintiff experienced an increase in psychological symptoms due to a miscarriage and medication non-compliance (Tr. 296). An October, 2010 MRI of the lumbar spine was negative for nerve root impingement but showed mild facet spondylosis at L5-S1 (Tr. 338). Therapy notes from the same month state that Plaintiff was tearful, but exhibited good grooming Tr. 344). She denied hallucinations (Tr. 348). The following month, an MRI of the thoracic spine showed multiple defects causing flattening of the thecal sac (Tr. 340). The

---

[2] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM-IV-TR* at 34.

following month, Ashok Salvi, M.D. noted normal heel and toe walking with "some antalgic gait" (Tr. 516).

In February, 2011, Plaintiff indicated that physical therapy did not help relieve body pain (Tr. 525). She reported only short-term improvement from facet injections (Tr. 525). June, 2011 imaging studies of the chest were unremarkable (Tr. 397-398). Imaging studies of the lower back performed the following month were negative for abnormalities (Tr. 396). A whole body scan showed only mild findings (Tr. 395). Lesly Pompy, M.D. noted reports of depression and hip, buttocks, leg, arm, and foot pain (Tr. 382). Plaintiff exhibited good posture, a normal affect, 4/5 muscle strength and normal muscle tone (Tr. 378-379). Plaintiff received facet joint injections to the lumbar spine (Tr. 370-371). Dr. Pompy's followup notes state that Plaintiff's mental status was unremarkable (Tr. 365). The following month, Dr. Pompy gave Plaintiff a "guarded" prognosis for physical problems (Tr. 362). September, 2011 treating notes state that recent physical therapy made her condition worse (Tr. 564, 568, 570). In December, 2011, Millenbach opined that Plaintiff was unable to work "due to both her physical and mental health needs" (Tr. 354). The same month, Plaintiff was diagnosed with kidney stones (Tr. 590, 629, 534).

### C. Vocational Expert Testimony

VE Bassey Duke classified Plaintiff's former work as a factory worker as exertionally medium and unskilled; fast food restaurant manager, light/skilled; and fast food worker,

light/unskilled[3] (Tr. 57). The ALJ then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education, and work history:

> [A]ble to do full range of light work but needs to alternate sitting and standing to alleviate pain or discomfort; would be limited to occasional climbing ramps, stairs, ladders, ropes or scaffolding, balancing, stooping, kneeling, crouching, and crawling; would be limited to doing work that's limited to simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions with few, if any, workplace changes (Tr. 57-58).

The VE stated that the above limitations, combined with a "sit/stand" option, would preclude all of Plaintiff's past relevant work, but would allow the individual to perform the unskilled, light work of a garment sorter (3,000 positions in existence in the State of Michigan); photo copy machine clerk (1,500); and marker (5,000) (Tr. 58-59). The VE testified that if the same individual were limited to occasional interaction with the general public and coworker, the job numbers would not be affected (Tr. 59). He stated that the need to be "off task" for 20 percent of the day or more would preclude all work (Tr. 59). In response to questioning by Plaintiff's attorney, the VE stated that an individual who became angry and used "foul language" two to three times each workweek would be unable to perform any work (Tr. 60).

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

**D. The ALJ's Decision**

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of bipolar disorder, schizoaffective disorder, major depression with psychosis, anxiety disorder, status-post gastric bypass, kidney stones, small umbilical hernia, anemia, hypertension, fibromyalgia, and degenerative disc disease of the thoracic and lumbar spine but that none of the conditions met or medically equaled an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 15-16). He found that Plaintiff experienced mild deficiencies in activities of daily living and moderate deficiencies in social functioning and concentration, persistence, or pace (Tr. 16). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following limitations:

> [L]imited to occasional climbing, balancing, stooping kneeling, crouching or crawling, further limited to only simple, routine, and repetitive tasks in work environments with no fast-pace production requirements and only few, if any, workplace changes. In addition, the claimant is limited to only occasional interaction [with] co-workers and with the general public. In addition, the claimant is limited to work that permits the claimant to alternate between sitting and standing at will during the workday to alleviate symptoms of pain and discomfort (Tr. 17).

Citing the VE's job findings, he found that Plaintiff was unable to perform any of her former jobs but could work as a garment sorter, photocopy machine clerk, or marker (Tr. 20).

The ALJ found that the treating records did not support Plaintiff's alleged degree of limitation (Tr. 18-19). He assigned "little weight" to Millenbach's opinion that Plaintiff was unable to work, noting that Millenbach did not cite mental or physical limitations supporting a disability finding (Tr. 18). He found that Millenbach's opinion was contradicted by treating

records showing that the psychological symptoms were well controlled as of February 24, 2011 (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

**ANALYSIS**

  A.  **The Step Three Determination**

Plaintiff argues that the Step Three finding that none of her conditions medically equaled a listed impairment is not supported by substantial evidence. *Plaintiff's Brief*, 13-14, *Docket #16*. She contends that the ALJ impermissibly relied on a "single decision-maker" ("SDM") in the absence of opinion evidence on the issue of equivalency. *Id.*

As a preliminary matter, the Court notes the distinction between the Step Three finding that a claimant does not meet a listed impairment and the finding that she did not medically equal a listed impairment. In contrast to the former, an equivalency finding must be supported by opinion evidence. "[W]hile an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings." *Stratton v. Astrue,* — F.Supp. 2d — , 2012 WL 1852084, *12 (D.N.H. 2012)(citing SSR 96-6p, 1996 WL 374180, *3)("longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight"). "This is presumably because making an equivalency finding requires difficult medical judgments as to the severity of a claimant's ailments, judgments that are greatly assisted by consulting an expert." *Stratton,* at *12. In addition to the signature of a medical expert on the Disability Determination and Transmittal Form made at the time of the initial determination, a finding regarding equivalency can be obtained through a "Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings." SSR 96-6p at *13.

"The single decisionmaker model stems from 20 C.F.R. §§ 404.1406(b)(2)" and 404.906(b)(2)," which "provide for an experimental, stream-lined procedure that eliminated the reconsideration level of review," permitting "claims to go directly from the initial denial

to ALJ hearing" for the purpose of allowing "'the single decisionmaker to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants.'" *Lindsey v. Commissioner of Social Sec.,* 2013 WL 6095545, *6 (E.D.Mich. November 20, 2013)(citing *Crooks v. Comm'r of Soc. Sec.,* 2013 WL 4502162, at *9 (E.D.Mich. Aug.22, 2013))(punctuation omitted). However, in an ALJ's determination, "RFC forms completed by SDMs" do not constitute "'opinion evidence'" *Id.* (citing Programs Operations Manual System ("POMS") DI § 24510.05)). "'[U]nder the regulations and agency policy, SDM assessments have no place in an ALJ's disability determination.'" *Id.* (citing *White v. Comm'r of Soc. Sec.,* 2013 WL 4414727, *8 (E.D.Mich. Aug.14, 2013)).

In the initial determination, the finding that Plaintiff did not meet or medically equal a listed *psychiatric* impairment was made by psychiatrist Ruqiya Tareen, M.D. (Tr. 64, 69). In contrast to the signature of an SDM, "[t]he signature of a State agency medical or psychological consultant" made on a Disability Determination and Transmittal Form "ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." SSR 96-6p, 1996 WL 374180, *3 (July 2, 1996). Dr. Tareen's finding constitutes substantial evidence supporting the ALJ's Step Three finding that Plaintiff's psychiatric conditions did not meet or medically equal a listed impairment.

In contrast, the equivalency determination regarding Plaintiff's physical conditions was made by SDM Richard Krickow rather than a medical expert (Tr. 71). The transcript

-13-

does not contain a medical opinion on the issue of equivalency. While Defendant is correct that the Step Three determination ultimately rests with the ALJ, *Defendant's Brief* at 6, *Docket #19,* the findings must nonetheless be supported by substantial evidence. The absence of any medical opinion stating that Plaintiff's physical conditions did not medically equal a listed impairment constitutes grounds for remand.

Defendant's alternative contention that Dr. Tareen's signature on the Disability Determination and Transmittal Form satisfied the equivalency requirement for both the mental and physical conditions is not well taken. Defendant notes that Dr. Tareen, a psychiatrist, "evaluated the severity of Plaintiff's mental impairments," but does not dispute that the equivalency finding regarding the physical conditions was performed by SDM Richard Krickow. *Defendant's Brief* at 6 (citing Tr. 69, 71). Opinion evidence regarding equivalency of the psychiatric conditions does not remedy the lack of opinion evidence regarding the physical conditions. *See Trainor v. Commissioner of Social Sec.,* 2014 WL 988993, *24 (E.D.Mich. 2014)(physician's signature on the Determination Transmittal Form and analysis of psychiatric evidence did not cure his failure to consider equivalency regarding the physical impairments).

Further, the fact that the ALJ did not actually cite the SDM's opinion in making the Step Three finding does not change the outcome, given the absence of substantial evidence to support the finding that the physical conditions did not equal a listed impairment. *See Pizzo v. Commissioner of Social Sec.* 2014 WL 1030845, *19 (E.D.Mich. March 14,

2014)(citing *Stratton*, *supra* at *11–12 )("While the ALJ did not rely on the opinion of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand"); *Lindsey, supra,* at *7 ("even if [the ALJ] . . . did not rely on the SDM opinion, the lack of medical opinion evidence on the issue of equivalence alone requires remand"). Because the transcript is absent any opinion pertaining to equivalency of the physical conditions, the case should be remanded "so the ALJ can obtain a qualified medical opinion on the issue of equivalence." *Lindsey,* at 7.

I also reject Defendant's argument that the lack of substantial evidence supporting the equivalency findings amounts to harmless error. *Defendant's Brief* at 6-8. First, at Step Two, the ALJ found that Plaintiff experienced severe physical impairments anemia, hypertension, fibromyalgia, and degenerative disc disease of the thoracic and lumbar spine (Tr. 15). At a minimum, the Step Two finding implies potential work-related limitations caused by these conditions. While Defendant contends that none of the physical conditions were disabling, the presence of physical limitations at Step Two required that the ALJ continue his analysis at Step Three.

Second, the lack of record support for the equivalency finding is compounded by the ALJ's failure to cite any of the Listings he considered in finding that Plaintiff did not meet a listed impairment.[4] The failure to mention any of the applicable Listings for the physical

---

[4]The ALJ included a page-long discussion of the applicable psychiatric Listings, but provided no rationale for his finding that the physical conditions did not meet a Listing (Tr. 16-17).

conditions, standing alone, requires a remand. *See Reynolds v. Commissioner of Social Security*, 424 Fed.Appx. 411, 415, 2011 WL 1228165, *3 (6th Cir.April 1, 2011)(remand appropriate where "[n]o analysis whatsoever was done as to whether Reynolds' physical impairments ... met or equaled a Listing....").

### B. Dr. Tareen's Mental Residual Functional Capacity Assessment Form

Plaintiff makes a brief argument that the hypothetical question to the VE ought to have contained all of Dr. Tareen's discrete findings made in the Mental Residual Functional Capacity Assessment, including moderate difficulties carrying out detailed instructions and moderate difficulty maintaining attention for extended periods and working without disruption as a result of psychological problems (Tr. 72-73). *Plaintiff's Brief* at 14-15 (citing Tr.72-73).

This argument is not well taken. First, Plaintiff's position that the hypothetical question ought to have contained a verbatim recitation of all the individual limitations has been rejected by the Sixth Circuit. *See Webb v. CSS*, 368 F. 3d. 629, 632 (6th Cir. 2004). Further, as stated in Program Operation Manual System ("POMS") DI 24510.060(B)(2)(a)), the limitations found in the initial section of Dr. Tareen's Assessment (Tr. 72-73) were "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation ..." By itself, the first section of the non-examining evaluation "does not constitute the RFC assessment." *Id*. Thus, the ALJ did not err in simply drawing on Dr. Tareen's conclusion that despite the presence of a number of moderate

psychologically based limitations, Plaintiff was capable of performing "simple tasks" (Tr. 73).

Moreover, the ALJ's choice of limitations in the hypothetical question ("simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions with few, if any, workplace changes") accounts for the degree of limitation found by Dr. Tareen and the record as a whole showing that the psychiatric conditions did not prevent Plaintiff from engaging in a wide range of activities (Tr. 57-58). Dr. Tareen's findings do not state or imply that she would be "off task" at least 20 percent of the workday due to psychologically based symptoms and thus unable to perform any work.

While Plaintiff argues generally that the hypothetical modifiers did not convey her full degree of limitation, other courts in the district have found that modifiers similar to the ones used by ALJ Begley (simple, routine, and unskilled) are sufficient to account for a claimant's moderate concentrational limitations. *See Lewicki v. Commissioner of Social Security,* 2010 WL 3905375, *2 (E.D.Mich. Sept.30, 2010) (the modifiers of "simple routine work" adequately accounted for the claimant's moderate deficiencies in CPP); *Schalk v. Commissioner of Social Sec.,* 2011 WL 4406824, *11 (E.D.Mich. August 30, 2011) ("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.*, No. 07–13138, 2008 WL 2478325, *7 (E.D.Mich. June 16, 2008)). Because the ALJ's choice of hypothetical

limitations pertaining to the psychiatric conditions is well supported by the record, this aspect of the administrative findings should remain undisturbed.

For the reasons set forth in section **A.**, a remand is required. Still, because the present transcript shows far less than an "overwhelming" case for disability, the Plaintiff is not automatically entitled to an award of benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir.1994). Accordingly, the case should be remanded to the administrative level for the purpose of obtaining a qualified medical opinion on the issue of equivalence.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment be DENIED and that Plaintiff's motion for summary judgment be GRANTED to the extent that the case is remanded to the administrative level for further proceedings consistent with this Report and Recommendation.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise

others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); and *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen (14) days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

        s/ R. Steven Whalen
        R. STEVEN WHALEN
        UNITED STATES MAGISTRATE JUDGE

Dated: June 23, 2014

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 23, 2014, electronically and/or by U.S. mail.

        s/Carolyn M. Ciesla
        Case Manager to the
        Honorable R. Steven Whalen